## AS TO WHETHER THE MAIN ISSUE WAS SUBMITTED TO THE JURY.

[Circuit Court of Lucas County.]

THE DETWILER REAL ESTATE & INVESTMENT COMPANY v. EDWARD V. E. RAUSCH.

Decided, October, 1906.

*Commissions—For Sale of Real Estate—Agency—Issue as to, for the Jury—Charge of Court—Motion for a New Trial—Bill of Exceptions.*

Where a motion for a new trial includes the ground that the verdict was contrary to law, it includes error of the court in the charge to the jury, and a bill of exceptions prepared within forty days from the overruling of the motion is prepared in time.

PARKER, J.; HAYNES, J., and WILDMAN, J., concur.

Heard on error.

In this case the action in the court below was brought by Edward V. E. Rausch against the Detwiler Real Estate & Investment Company to recover commissions for selling real estate. The defendant filed an answer in which, after admitting that it was a corporation, and that its principal office was in the city of Toledo, Ohio, denied each and every other allegation contained in the plaintiff's petition. The case went to trial to a jury, and there was a finding in favor of the plaintiff for the full amount he claimed and judgment was entered upon the verdict.

The plaintiff in error claims that the main issue, *i. e.*, as to whether it was liable at all upon this claim, was not submitted by the court to the jury.

It appears that there were two companies having their offices and places of business in the same room, or the same building in this city, one the plaintiff in error, the Detwiler Real Estate & Investment Company, the other the I. H. Detwiler Company; that the real estate and investment company is what is called a holding company, a company which holds the title to cer-

tain real estate, and that it owns considerable real estate
in the city; that the I. H. Detwiler Company is a real estate
brokerage company. I may say that besides these two com-
panies there are quite a number of corporations that also
have their offices in the same building and room. It does
not appear that the stockholders of these two companies
are identical. It appears that one George K. Detwiler is
the president of the I. H. Detwiler Company, the broker-
age company, and that he is the vice-president of the
Detwiler Real Estate & Investment Company. That the plaint-
iff, Rausch, went to George K. Detwiler at this place of business
and said to him—taking the statement of Mr. Rausch—that he
had a prospective buyer for Superior street property, and asked
him about the Superior street hotel property, the price of
it, and if it was for sale. Detwiler said that it was for
sale, that everything he had was for sale. Rausch told Detwiler
that he had a buyer that he had been showing some property,
and he thought he could interest him in that property and maybe
could make a deal for it, and asked him the dimensions of the
property, etc. Now that it is the way the negotiations opened
up, which resulted in Mr. Rausch finding a purchaser for this
property. It appears that in the talk with Mr. Detwiler there
was no inquiry made and nothing said pointedly as to who
held the legal title to this property, or as to who Mr. Det-
wiler was representing in the transaction, whether himself,
the I. H. Detwiler Company, or the real estate and invest-
ment company, or some other person or company; but Mr.
Rausch appears to have supposed that he was dealing with
George K. Detwiler personally. Mr. Detwiler says, how-
ever, that he was, as a matter of fact, in the transaction
representing the I. H. Detwiler Company, the real estate
brokerage company; that all of the real estate owned by the
real estate and investment company had been put into the hands
of the I. H. Detwiler Company for sale, and that he as vice-
president of the Detwiler Real Estate & Investment Company
had no authority to sell property of that company, and had
no authority to select agents for that company and authorize
them to sell its property.

Now, the property was sold, as I have said, and it appears that in the course of negotiations a Mr. Chalmers, who was an officer of and interested in the I. H. Detwiler Company, took an active part in the transaction which would have some tendency to show that it was really the I. H. Detwiler Company that was moving in the business. When the deed came to be made for the property, it was signed by George K. Detwiler, as vice-president of the I. H. Detwiler Real Estate & Investment Company, and it appears that he, in the absence of the president, was authorized to sign deeds. Of course, it was necessary to have a deed from the owner of the legal title to the purchaser. This deed was signed by him as vice-president, and also by the secretary of the company, in pursuance of the authority contained in the by-laws of the company.

So it appears that the controversy was as to whether this was a transaction between the I. H. Detwiler Company, represented by George K. Detwiler and Mr. Rausch, or the Detwiler Real Estate & Investment Company, represented by George K. Detwiler and Mr. Rausch, and there was evidence tending to support both claims. If George K. Detwiler was in fact representing the I. H. Detwiler Company, and the Detwiler Real Estate & Investment Company had done nothing in the premises whereby it was estopped from making the defense, there would be no liability upon the part of that company to Mr. Rausch for his commission. And it appears that if it was the I. H. Detwiler Company that was being represented, there would be one rule according to the customs in the city of computing the amount that would be due Mr. Rausch as commission; and if he was representing the owner, the Detwiler Real Estate & Investment Company, he would be entitled to a commission under another rule; that in the first case he would be entitled to share in the commission; in the second case he would be entitled to all the commission customarily made upon sales of real estate.

Now it seems to us that during the trial of the case something must have occurred to give it a direction or aspect which caused the court to see very distinctly that there was a question as to the amount of commission Mr. Rausch might be entitled to in

the one case or in the other, but caused him to lose sight of the fact that· there was another question involved, *i. e.*, whether the defendant in this case was liable at all for any commission. If it was not a transaction for the plaintiff in error, if George K. Detwiler was not representing the plaintiff in error, then there would be no commission due from it. When the court came to charge the jury he said to them:

"It is therefore evident that the only controversy between the parties to this action is as to the amount of compensation that should be awarded the plaintiff. It is conceded that the usual and customary commission for procuring purchasers of real estate in this city is 5 per cent. on the first $1,000, and 2½ per cent. on the balance of the purchase price. The burden is upon the plaintiff to prove by a preponderance of the evidence the fair and reasonable value of the services rendered in procuring a purchaser for said real estate. If you find from a preponderance of the evidence that there was no agreement as to the amount of compensation to be allowed the plaintiff for procuring a purchaser for said real estate, then the plaintiff is entitled to recover the reasonable value of the services rendered by him in that behalf. If you find that there was no agreement as to the amount of compensation to be paid the plaintiff, then for the purpose of determining the fair and reasonable value of the services by him performed in procuring a purchaser for said real estate, you·may take into consideration the amount of compensation usually and customarily paid in this city for such services, though that amount is not to be taken as conclusive. If, however, you find that there was an agreement as to the amount of compensation to be paid the plaintiff, that agreement is controlling."

Further along the court instructs the jury:

"Having determined the compensation to which the plaintiff is entitled, you will then compute thereon and add thereto interest·at the rate of 6 per cent. per annum from the 16th day of February, 1906, to the first day of this term of court, to wit, April 2, 1906, and return the same with your verdict."

And then he hands to them a verdict which is prepared, which reads: "We find that there is due to the plaintiff from the defendant, the sum of $———", submitting to them the single question as to the amount due to the plaintiff, saying to them

in substance that the plaintiff is entitled to recover some amount—what amount you are to determine under the evidence.

We think that the charge was erroneous; that the main issue in the case was not submitted to the jury at all.

It is said by counsel for defendant in error that this question is not properly presented to this court, because the motion for a new trial does not specifically state as a ground that the court erred in the charge, and the bill of exceptions was not prepared and filed within forty days of the time that this error in the charge was committed, that the time was not protracted and carried forward, as it might have been by filing a motion for a new trial on that ground, giving the court another opportunity to rule upon it, and thereby making the time for the bill of exceptions forty days from the time of the ruling upon the motion.   It has been held that though it is not necessary that an objection and exception to the charge to the jury by the trial court be included in a motion for a new trial, when it is in fact included in such motion, the time in which the bill of exceptions may be filed begins to run from the overruling of the motion, instead of from the time of the committing of the error in the charge; whereas the time will begin to run at the time of such error in case it is stated as a ground for a new trial in the motion therefor.   The decisions bearing upon that will be found in the case of *Weaver* v. *Railroad Company,* 55 Ohio State, 491, and in *R. R. Co.* v. *Wright,* 54 Ohio St., 181.

The motion for a new trial in this case contains the following grounds:   (1)   That the verdict given by the jury was contrary to the weight of the evidence;  (2)   That the verdict given by the jury was contrary to law;  (3)   That the court erred in overruling defendant's motion to take the case from the jury and direct a verdict for defendant, and in excluding testimony by defendant and admitting testimony objected to by defendant.

In *Weaver* v. *Railway Company, supra,* Judge Bradbury, in discussing  the statutes on the subject of new trials, bills of exceptions, etc., says:

"The sixth division of Section 5305, prescribing that a new trial may be had on the ground 'that the verdict, report or

decision is not sustained by sufficient evidence or is contrary to law.' * * * is broad and comprehensive. It would seem to include any error of law committed by the trial court in the course of the trial prejudicial to the losing party.''

We conclude that according to the views of the Supreme Court expressed by Judge Bradbury this motion for a new trial containing the ground that the verdict was contrary to law includes the error of the court in its charge to the jury; and that, therefore, the bill of exceptions prepared within forty days from the overruling of that motion was prepared in due time.

On account of the errors in the charge above indicated the judgment of the court of common pleas will be reversed.

*F. E. Calkins* and *L. W. Story,* for plaintiff in error.

*H. D. Merrick* and *J. C. Jones,* for defendant in error.